UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

GRADY HUDSON, # 274187,

        Plaintiff,

v.

KATIE MAYNARD, et al.,

        Defendants.

Case No. 1:09-cv-185

Honorable Paul L. Maloney

**REPORT AND RECOMMENDATION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint, as amended, concerns conditions of his July 2006 confinement at the Ionia Maximum Correctional Facility (ICF). He names three State of Michigan employees at ICF as defendants: (1) Records Supervisor Katie Maynard; (2) Assistant Records Supervisor Jason Wayne; and (3) Warden's Administrative Assistant Roger Groves. Plaintiff alleges that defendants Maynard and Wayne failed to "diligently mail" his application to the Michigan Court of Appeals for leave to appeal a July 18, 2005 denial of a motion for post-conviction relief. (docket # 8, Am. Compl. at 3, ¶ 1, ID # 48). He alleges that defendant Groves knowingly acquiesced in the actions of the other defendants. (*Id.* at 4 ¶ 5, ID # 49). Plaintiff alleges that defendants violated his rights under the First, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1985. (*Id.* at 2, 7, ¶¶ IV(9), (11), ID #s 50, 52). He sues defendants in their individual capacities and seeks an award of damages and declaratory relief. (*Id.* at 2, 8, ¶¶ III(B), V, ID #s 47, 53).

The matter is before the court on cross-motions for summary judgment. For the reasons stated herein, I recommend that plaintiff's claims for declaratory relief be dismissed because they are moot. I further recommend that plaintiff's motion for summary judgment (docket # 14) be denied, that defendants' motion for summary judgment (docket # 35) be granted, and that a final judgment be entered in defendants' favor.

**Applicable Standards**

A. **Summary Judgment Standard**

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Group*, 415 F.3d 487, 493 (6th Cir. 2005). "'[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate.'" *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005)(quoting *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004)).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable

inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be

sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000))*; Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### B. Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies

Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show

that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 674 (6th Cir. 2009); *see also Vandiver v. Correctional Med. Servs.*, 326 F. App'x 885, 888 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court. 548 U.S. at 90-93; *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective December 19, 2003) sets forth the applicable grievance procedures.[1] Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond

---

[1] Defendants' Exhibit 4A is a copy of this policy directive. (docket # 36, Ex. 4A, ID #s194-200).

his or her control. *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ T, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009); *accord Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008)(collecting cases).

The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. P.D. 03.02.130 at ¶¶ X, Y. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within five business days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden. *Id.* at ¶ FF. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the Step III respondent.

*Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 90 calendar days unless an extension has been approved in writing ...." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see also Booth v. Churner*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *Jones v. Douglas*, 108 F. App'x 254, 256 (6th Cir. 2004); *Green v. Tudor*, 685 F. Supp. 2d 678, 687 (W.D. Mich. 2010); *see also Bowen v. Michigan Dep't of Corr.*, No. 08-12877, 2010 WL 956000, at * 4 (E.D. Mich. Mar. 15, 2010)("[A] grievance that is not advanced through Step III of the Policy does not fulfill the PLRA's exhaustion requirement."). The higher summary judgment standard applies to the portion of defendants' motion for summary judgment based on the affirmative defense of plaintiff's failure to exhaust his available administrative remedies.

**Proposed Findings of Fact**

The following facts are beyond genuine issue.

1. Plaintiff's Criminal Convictions, Sentence, Direct Appeal, and
   Federal Habeas Corpus Petition

On October 9, 1998, a Wayne County Circuit Court jury found plaintiff guilty of second-degree murder and possession of a firearm during the commission of a felony. On November 6, 1998, he was sentenced as a habitual offender, third felony offense, to 40-to-60 years' imprisonment on his murder conviction and a mandatory consecutive term of 2 years' imprisonment on the felony firearm conviction.

Plaintiff pursued an unsuccessful direct appeal. On December 26, 2000, the Michigan Court of Appeals affirmed plaintiff's conviction and sentence. *See People v. Hudson*, No. 216054, 2000 WL 33385203 (Mich. Ct. App. Dec. 26, 2000). It found no merit in plaintiff's arguments that jury instructions had been erroneous and had deprived him of a fair trial. *Id.* at * 1. The Court of Appeals found that the trial judge had not abused his discretion in precluding questioning of witness Dion Smothers regarding "other thefts," and even assuming *arguendo* that an error had occurred, it was harmless given the strength of the other evidence of plaintiff's guilt. *Id.* at 2. The Michigan Court of Appeals rejected plaintiff's challenges to his sentence. It observed that second-degree murder is punishable by life imprisonment or any term of years and that the State's third habitual offender statute authorizes the imposition of a sentence of life or any lesser term. 2000 WL 33385203, at * 3 n.1. It rejected plaintiff's arguments based on Michigan's sentencing guidelines because the guidelines did not apply to plaintiff's habitual offender sentence:

> Defendant next argues that he must be resentenced because his sentence is disproportionate. Defendant argues specifically that his sentence exceeds the sentencing guidelines. This

> Court reviews a trial court's sentence imposed on an habitual offender for an abuse of discretion. *People v. Reynolds*, 240 Mich.App 250, 252; 611 NW2d 316 (2000). Our review of an habitual offender sentence is limited to considering whether the sentence violates the principle of proportionality set forth in *People v. Milbourn*, 435 Mich. 630; 461 NW2d 1 (1990), without reference to the guidelines. *People v. Gatewood (On Remand)*, 216 Mich.App 559, 560; 550 NW2d 265 (1996). Under the principle of proportionality, a sentence must be proportionate to the seriousness of the crime and the defendant's prior record. *Milbourn*, *supra* at 635-636. "[A] trial court does not abuse its discretion in giving a sentence within the statutory limits established by the Legislature when an habitual offender's underlying felony, in the context of his previous felonies, evidences that the defendant has an inability to conform his conduct to the laws of society." *People v. Hansford (After Remand)*, 454 Mich. 320, 326; 562 NW2d 460 (1997).

*People v. Hudson*, 2000 WL 33385203, at * 3. The Court of Appeals then summarized plaintiff's history of felony convictions and noted that he had committed this murder while free on bond on a manslaughter charge, to which he later pleaded guilty. *Id.* at 3. The Michigan Court of Appeals held that plaintiff's sentence was "proportionate to the offense and the offender." *Id.* On July 30, 2001, the Michigan's Supreme Court denied plaintiff's application for leave to appeal. *See People v. Hudson*, 632 N.W.2d 142 (Mich. 2001).

On July 19, 2002, plaintiff, through retained counsel, filed a federal habeas corpus petition in the United States District Court for the Eastern District of Michigan. On March 18, 2003, Judge Avern Cohn denied plaintiff's habeas corpus petition for lack of merit. *See Hudson v. Straub*, 2:02-cv-72973 (E.D. Mich. Mar. 18, 2003). Judge Cohn rejected plaintiff's argument that improper jury instructions had deprived him of a fair trial. He found that plaintiff's Confrontation Clause claim was devoid of merit. Judge Cohn rejected plaintiff's Eighth Amendment argument and held that plaintiff's sentence was not "grossly disproportionate" given plaintiff's murder of an innocent 15-year-old bystander and his extensive criminal record. Plaintiff did not seek appellate review of this judgment.

2.  Motion for Post-conviction Relief in the Wayne County Circuit Court

In June of 2005, plaintiff filed a motion in Wayne County Circuit Court seeking post-conviction relief under Rule 6.500 of the Michigan Court Rules. On July 18, 2005, the court entered an order denying the motion for post-conviction relief.[2] Under Michigan's court rules, plaintiff had one year from the date of entry of the court's July 18, 2005 order within which to file an application for leave to appeal to the Michigan Court of Appeals. MICH. CT. R. 6.509(A).

3.  Application for Leave to Appeal

Plaintiff offers no explanation for his decision to wait until Wednesday, July 12, 2006, before he attempted to mail his application for leave to appeal to the Michigan Court of Appeals. This was a mere four business days before his July 18, 2006 deadline to file his application in the Court of Appeals.[3] Plaintiff did not avail himself of the prison's expedited legal mail process. (docket # 36-5, Groves Aff. ¶ 8, ID # 189; docket # 36-3, Wayne Aff. ¶ 8, ID # 164). Expedited mail is to be processed within two business days after it is received by a prison staff member. (docket # 36-4, Policy Directive 05.03.118 ¶ O (effective 01/01/2006), ID # 170). Instead, plaintiff elected to submit a standard disbursement authorization form (CAR-893). Mail submitted through the ordinary disbursement process is to be sent out of the prison as soon as possible. (*Id.* at ¶ O, ID # 170). The MDOC's policy directive warns that mail requiring special handling may

---

[2]Plaintiff did not file a copy of the July 18, 2005 order. He states that the Wayne County Circuit Court judge found a violation of MCR 6.508(D)(2), which prohibits the raising of issues previously decided. (docket # 1 attachment, Motion to Stay Appellate Brief in Lieu of Further Evidentiary Findings at ¶ 5, ID # 18).

[3]Under Michigan law, an application for leave to appeal is not filed until it is received by the Michigan Court of Appeals. No "mailbox rule" applies. *See Dorn v. Lafler*, 601 F.3d 439, 444 (6th Cir. 2010); *Walker-Bey v. Department of Corr.*, 564 N.W.2d 171, 173 (Mich. Ct. App. 1997).

require additional processing time. (*Id.* at ¶ WW, ID 179). Although the Michigan court rules did not require it, plaintiff elected to have his package sent to the Court of Appeals by certified mail, return receipt requested. (Groves Aff. ¶ 8, ID # 189; Wayne Aff. ¶ 8, ID # 164). Defendant Wayne approved plaintiff's disbursement request on July 12, 2006, the same day he received it. (docket # 1, Ex. A, ID # 8; Wayne Aff. ¶ 5, ID 163).

When the prison's mail room receives mail accompanied by the standard disbursement form (CAR-893), the employee determines the proper amount of postage and notes it on the form. The mail and the form are then forwarded to the prisoner accounting section of ICF's business office. The accounting department deducts the postage from the prisoner's account. On Friday, July 14, 2006, the postage fee was deducted from plaintiff's account. (docket # 1, Ex. C, ID # 10; docket # 41, Plf. Aff. ¶ 2, ID # 259; docket # 50-8, Maynard Aff. ¶ 5, ID # 355). After the cost of postage is deducted, the disbursement form and mail are returned to ICF's mail room. (Maynard Aff. ¶ 4, ID #s 354-55). ICF does not have outgoing mail service on weekends or holidays. The next day that mail service was available was Monday, July 17, 2006. (Maynard Aff. ¶¶ 3, 5, ID #s 354-55). On Monday, July 17, 2006, plaintiff's materials (docket # 1 attachments, ID #s 17-23) were mailed from the prison. After an item is mailed, the white copy of the CAR-893 form is returned to the prison's business office. (Maynard Aff. ¶ 4, ID #s 354-55). The initials "K.M." and the date "7-17" indicate that defendant Maynard returned the white copy of the disbursement form to ICF's business office on July 17, 2006. (Maynard Aff. ¶ 6 and attachment, ID #s 355-57).

On July 18, 2006, plaintiff asked defendant Wayne to call the clerk of the Michigan Court of Appeals and "explain the delay." Plaintiff states that Wayne was initially receptive to this

suggestion, but later indicated that his supervisor, defendant Groves, had instructed him "not to get into it." (docket # 1, Plf. Aff. ¶¶ 9, 10, ID # 14). Groves purportedly advised Wayne that if plaintiff was late in getting his papers filed it was his own fault for not using the available expedited legal mail process. (*Id.* at ¶ 11, ID # 15).

On Thursday, July 20, 2006, the Michigan Court of Appeals received plaintiff's application for leave to appeal. (docket # 1, Ex. D, ID # 11). On August 8, 2006, plaintiff prepared an affidavit in which he offered the Court of Appeals his excuse that he had given his application for leave to appeal to ARUS Wayne on Wednesday, July 13, 2006, and thought that it would reach the Michigan Court of Appeals before his July 18, 2006 deadline. (docket # 1, Affidavit in Support of Reason for Delay, ID #s 24-25). Plaintiff's affidavit did not offer the court any explanation why he waited until the last minute to file his application. (*Id.*). On August 14, 2006, the court received plaintiff's affidavit . (docket # 46-5, ID #s 280-81). On September 8, 2006, the Michigan Court of Appeals dismissed plaintiff's application for leave to appeal:

> The delayed application for leave to appeal and the motion for stay are DISMISSED for lack of jurisdiction since appellant failed to file his delayed application for leave to appeal within 12 months of the entry of the July 18, 2005 order denying his motion for relief from judgment under MCR 6.500 *et seq.*, MCR 6.509(A), 7.203(B)(1), and 7.205(F)(3).

(docket # 1, Ex. E, ID # 12). Plaintiff did not file a motion asking the Michigan Court of Appeals to reconsider its order or seek review by the Michigan Supreme Court.

2. <u>Grievance Number RCF-07-06-1032-28E</u>

Plaintiff waited almost a full year before he filed his grievance regarding the alleged mishandling of his mail. (docket # 38-3, Plf. Aff. ¶ 7, ID # 238). On June 6, 2007, plaintiff drafted the following grievance:

> On 7-12-06 I mailed packages to the Court of Appeals and Wayne County Prosecutor's Office. Someone in the business office whose initials are K. M. did not process or mail my legal mail until after 3 p.m. on July 17, 2006. Thereby violating P.D. 05.03.118-O[] which states that mail sent out via disbursement that is clearly identified as going to a court or attorney shall be processed as soon as possible, which denied me due process and access to courts. This was not a holiday and [the mail] should have been processed an mailed on 7-13-06 [or] 7-14-06 at the very latest. ARUS Wayne was aware of the content of the packages and the filing deadline of 7-18-06.

(docket # 36-6, Attachment D, ID # 209). The grievance coordinator received plaintiff's grievance on June 11, 2007. (*Id.*). On June 12, 2007, plaintiff's grievance was denied at Step I because it was untimely (*Id.*), and it was upheld on that basis through Steps II and III of the appeal process. The Step III decision is dated October 4, 2007. (*Id.* at ID # 207).

On February 25, 2009, plaintiff filed this lawsuit in the United States District Court for the Eastern District of Michigan (docket # 1), and it was later transferred here (docket # 3).

## Discussion

1. Mootness

Plaintiff is an inmate at the Lakeland Correctional Facility (LCF). (docket # 56). The defendants are employed by the State of Michigan at ICF. Plaintiff's claims for declaratory relief against the defendants are moot. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010).

2. Exhaustion

Defendants have raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against them as required by 42 U.S.C. § 1997e(a). Plaintiff filed his grievance on June 6, 2007, approximately a year after the alleged actions taken by defendants. His

grievance was denied as untimely and upheld on that basis through all the steps of the MDOC's review process. Plaintiff's argument that he did not have a grievable issue until the Michigan Court of Appeals entered its September 8, 2006 order (Plf. Brief at 8, ID # 220) cannot possibly save his claims. It simply reinforces how late his 2007 grievance was.

Plaintiff's argument that his claims against defendants were "non-grievable" (docket # 38, Plf. Brief at 8, 15, ID #s 220, 227; docket # 56, Plf. Brief at 2, ID # 394) is frivolous. He argues that, "Because all of [his] injuries stemmed from a Court Order[4] – that Defendants proximately caused – the injuries that Plaintiff sustained were not within the authority of the department to resolve, and therefore non-grievable issues pursuant to P.D. 03.02.130 sec F sub sec. 3." (Plf. Brief at 15, ID # 227)(citing Policy Directive 03.02.130, ¶ F, ID # 195). Plaintiff's claim against defendants is based on alleged mishandling of his mail. It is patent that the MDOC has authority to address alleged instances of mishandling of outgoing prisoner mail by its employees. *See e.g., Payette v. Caruso*, 2:09-cv-22, 2010 WL 2926582, at * 3 (W.D. Mich. July 1, 2010) ("The mishandling of prisoner mail or legal mail is the type of matter that is grievable through MDOC's grievance process."). Plaintiff was required to use the available grievance process, even though he may not have been able to obtain the specific type of relief he desired through it. *See Porter*, 534

---

[4]This court lacks jurisdiction to entertain any claim by plaintiff that he suffered injury as a result of the order of the Michigan Court of Appeals. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005); *see also Kovacic v. Cuyahoga County Dep't of Children & Family Servs.*, 606 F.3d 301, 309 (6th Cir. 2010) (the *Rooker-Feldman* doctrine bars cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments). Plaintiff's avenue for challenging the decision of the Michigan Court of Appeals was filing an application for leave to appeal to the Michigan Supreme Court, and if necessary, filing a petition for a writ of certiorari in the Supreme Court of the United States. *See In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009).

U.S. at 520; *see also Melton v. Michigan Corr. Comm'n*, No. 07-15480, 2009 WL 722688, at * 2 (E.D. Mich. Mar. 17, 2009) ("[A] prisoner cannot forego the grievance process altogether, based on the belief that he would not be successful."). I find that defendants have carried their burden on the affirmative defense. They are entitled to judgment in their favor as a matter of law, because plaintiff's untimely grievance did not properly exhaust his claims. *See Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009)("*Woodford* makes clear that a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance.").

       3.      <u>Alternative Grounds for Granting Defendants' Motion for Summary Judgment</u>

Assuming *arguendo* that plaintiff had properly exhausted his claims, defendants would nonetheless be entitled to entry of judgment in their favor. Plaintiff's purported claims under Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1985 could not withstand review under Rule 12(b)(6) standards,[5] much less survive defendants' motion for summary judgment.

       A.      Plaintiff's Purported Claims under the Fifth, Sixth,
              and Fourteenth Amendments and 42 U.S.C. § 1985

       (1).    Fifth Amendment

Plaintiff alleges that defendants violated his Fifth Amendment rights. (Am. Compl. at 5, ¶ IV(9)). The Fifth Amendment restricts the actions of the federal government. *See Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 n.3 (6th Cir. 2007). There is no federal defendant in this lawsuit, so no Fifth Amendment claim is possible.

---

[5]It is apparent that plaintiff's amended complaint in the Eastern District was not subjected to initial screening under Rule 12(b)(6) standards as required by Prison Litigation Reform Act. *See* 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997); *see also Theriot v. Woods*, No. 2:09-cv-199, 2010 WL 623684, at * 1 (W.D. Mich. Feb. 18, 2010).

(2). Sixth Amendment

Plaintiff's amended complaint invokes the Sixth Amendment's Compulsory Process Clause (Am. Compl. at 5, ¶ IV(9), ID # 50), and he argues that he is entitled to damages based on a violation of his rights under the Confrontation Clause.[6] (docket # 15, Plf. Brief at 13, ID # 82). These Sixth Amendment clauses apply to the States through the Fourteenth Amendment's Due Process Clause. *Pennsylvania v. Ritchie*, 480 U.S. 39, 45 n. 5 (1987). The Compulsory Process Clause provides that in all criminal prosecutions, the accused shall enjoy the right to have compulsory process for obtaining witnesses in his favor. U.S. CONST. amend VI. This is a trial right that guarantees a criminal defendant the government's assistance in compelling witness attendance. *Pennsylvania v. Ritchie*, 480 U.S. at 56. The Confrontation Clause is also a trial right. *Id.* at 52-53; *see United States v. Davis*, 361 F. App'x 632, 636 (6th Cir. 2010). Plaintiff's trial ended on October 9, 1998. Defendants are not alleged to have acted until almost a decade later, when plaintiff was an inmate at ICF. Plaintiff's Sixth Amendment claims are frivolous.

(3). Fourteenth Amendment

Plaintiff's amended complaint contains a conclusory allegation that defendants violated his rights under the Fourteenth Amendment's Due Process and Equal Protection Clauses. (Am. Compl. at 5, ¶ IV( 9), ID # 50). Plaintiff has not alleged any viable Fourteenth Amendment claim. *See Stanley v. Vining*, 602 F.3d 767, 771 (6th Cir. 2010); *Grinter v. Knight*, 532 F.3d 567,

---

[6]Plaintiff filed a *pro se* application for leave to appeal. He has no basis for claiming a violation of his Sixth Amendment right to counsel. Further, there is no Sixth Amendment right to counsel on discretionary appeal. *See Wainwright v. Torna*, 455 U.S. 586 (1982); *accord Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991)(because there is no right to counsel in state post-conviction proceedings, there can be no constitutionally ineffective assistance of counsel in such proceedings).

573 (6th Cir. 2008); *see also Barhite v. Caruso*, No. 09-1312, 2010 WL 1957493, at * 3 (6th Cir. May 14, 2010). Plaintiff's claims that defendants violated the MDOC's procedure for mailing documents are not claims of constitutional dimension. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994).

(4). 42 U.S.C. § 1985

Plaintiff alleges that defendants violated his rights under 42 U.S.C. § 1985. (Am. Complaint, ¶ IV(9), ID # 50). Section 1985 is a provision of the Ku Klux Klan Act of 1871 and consists of three subsections. Plaintiff does not identify which of the statute's three subsections supports his claims. Section 1985(1), which prohibits conspiracies to interfere with federal officers in the performance of their duties, and the first clause of § 1985(2), which prohibits conspiracies to influence parties, witnesses, or jurors in federal court proceedings, are not applicable to this case. Plaintiff's amended complaint contains no factual allegations supporting such claims. *Fox v. Michigan State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006); *see Kush v. Rutledge*, 460 U.S. 719, 724-27 (1983)(subsection 2); *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 840 n.1 (1983)(subsection 1). Plaintiff fails to state a claim under the second clause of section 1985(2) because there are no facts in his amended complaint supporting a claim of a conspiracy "for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any state" motivated by racial or other class-based discriminatory animus. 42 U.S.C. § 1985(2); *see Kush*, 460 U.S. at 725-26; *see also Fox*, 173 F. App'x at 376. Any claim plaintiff was attempting to assert under section 1985(3) fails for similar reasons. The elements of a section 1985(3) claim are well established. *See Griffin v. Breckenridge*, 403 U.S. 88 (1971); *Center for Bio-Ethical*

*Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007). In order to state a viable private conspiracy claim under section 1985(3), a plaintiff must allege a conspiracy motivated by racial or other class-based discriminatory animus. *See Griffin*, 403 U.S. at 102-03; *Kush*, 460 U.S. at 725-26; *see also Estete of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010). Further, "conspiracy must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim." 477 F.3d at 832. Plaintiff's has not alleged facts sufficient to support a plausible claim under 42 U.S.C. § 1985.

      B.      First Amendment

It is well established that prisoners have a constitutional right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005). In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury" in a specific case. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). The actual injury requirement is not satisfied by just any type of frustrated legal claim. The actual injury must be connected to direct pursuit of a non-frivolous direct appeal from a criminal conviction, a habeas corpus petition or a civil rights action under 42 U.S.C. § 1983 to vindicate "basic constitutional rights." *Lewis*, 518 U.S. at 354; *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) ("A prisoner's right of access to courts extends to direct appeals, habeas corpus applications, and civil rights claims only."); *see Carney v. Christiansen*, No. 08-1337, 2010 WL 1644243, at * 1 (6th Cir. Apr. 26, 2010); *accord Dorn v. Lafler*, 601 F.3d 439, 443-44 (6th Cir. 2010). "'Depriving someone of a frivolous claim . . . deprives

him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.'" *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (quoting *Lewis v. Casey*, 518 U.S. at 353).

Plaintiff states that he applied to the Michigan Court of Appeals for leave to appeal based upon arguments that he had been sentenced as a fourth habitual offender rather than a third habitual offender and that an upward departure from Michigan's sentencing guidelines was not warranted. (docket # 15, Plf. Brief at 15-16, ID #s 84-85). These arguments were patently frivolous. On direct appeal, the Michigan Court of Appeals upheld plaintiff's sentence as a third habitual offender. It made pellucid that Michigan's sentencing guidelines did not apply to plaintiff's habitual offender sentence. *People v. Hudson*, 2000 WL 33385203, at * 3 (citing *People v. Gatewood*, 550 NW2d at 265).

Plaintiff argues that his papers "set forth substantial allegations that Trial Counsel[] purposefully suppressed exculpatory evidence of charged and convicted offense, evidence which would have substantially changed the outcome of plaintiff's proceedings." (Plf. Brief at 16, ID # 85). There is no evidence supporting his argument. It is well established that arguments appearing in a party's brief are not evidence. *See Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006).

Plaintiff offered no evidence that would excuse his decision to wait until the virtual expiration of the one-year deadline before he attempted to file his application for leave to appeal. Litigants who practice such brinkmanship do so at their own peril. *See e.g.*, *Kellum v. Comm'r*, 295 F. App'x 47, 50 (6th Cir. 2008) ("[T]his case will serve as yet another classic reminder of the risks that [litigants] take for no apparent reason by waiting until the very end of the filing period to initiate their lawsuits."). There is no evidence that defendants mishandled plaintiff's mail, much less that

they did so intentionally.[7] *Sims*, 170 F. App'x at 957. Plaintiff waited until the statute had almost run, then submitted his papers for mailing with special handling instructions. Defendants proceeded with due expedition. Plaintiff cannot sustain his burden to show that the lateness of his application was caused by defendants' culpable conduct. No reasonable trier of fact could find in plaintiff's favor on his First Amendment claims. Defendants are entitled to judgment in their favor as a matter of law.

**Recommended Disposition**

For the foregoing reasons, I recommend that plaintiff's claims for declaratory relief be dismissed because they are moot. I further recommend that plaintiff's motion for summary judgment (docket # 14) be denied, that defendants' motion for summary judgment (docket # 35) be granted, and that a final judgment be entered in defendants' favor.

Dated: September 13, 2010        /s/ Joseph G. Scoville
                                 United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).

---

[7]Negligent handling of a prisoner's mail does not rise to the level of a constitutional violation. *See Sims v. Landrum*, 170 F. App'x 954, 957 (6th Cir. 2006); *see also Stevenson v. Gamelin*, No. 2:08-cv-154, 2010 WL 915474, at * 3 (W.D. Mich. Mar. 12, 2010)(collecting cases).